JOSE GONZALEZ,

      Plaintiff,

      v.                                  Case No. 26-cv-1008-bhl

JOHN AND JANE DOES,
AMY DENNEAU, and
TRICIA WEISNICHT,

      Defendants.

## SCREENING ORDER

Plaintiff Jose Gonzalez, who is currently serving a state prison sentence at the Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On June 29, 2026, he paid the $450 civil case filing fee. This matter comes before the Court to screen the complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 556.  "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level."  *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Gonzalez, in February 2025, he began to complain about his difficulty breathing.  He was scheduled to see a nurse on February 25, 2025, but he missed the appointment because he was new to the institution and did not realize he had an appointment.  Gonzalez made another request to be seen on March 31, 2025, and was seen by a provider On May 5, 2025.   He was started on an antihistamine called loratadine.  The same day as his appointment, he submitted a health services request stating that one of his nostrils had completely collapsed and the other was getting worse.  In response, a nurse asked if the loratadine was helping.  On May 27, 2025, Gonzalez filed a health services request stating that he could not breathe out of his nose, his nose was bleeding, and one nostril had collapsed.  The next day, Defendant Health Services Manager Tricia Weisnicht responded that he had been seen by a nurse that day and that his request had been sent to his provider.

On June 10, 2025, Gonzalez was seen by his provider, Advanced Nurse Practitioner Amy Denneau.  She sent him a letter a couple of days after his appointment and informed him that his request for "nasal septal repair" had been reviewed by the Class III Committee.   They recommended that a sleep study be performed before consulting a specialist.  APNP Denneau stated that she had ordered the sleep study.  About two months later, on August 9, 2025, Gonzalez submitted a health services request asking whether he could have a CPAP machine.  He stated that he was supposed to receive one before being transferred from Dodge to Fox Lake.  In response, a nurse asked if he had had a sleep study performed because there was no order for a CPAP machine in his records.  On September 4, 2025, Gonzalez submitted a health services request stating that he had had a sleep study done in 2023 before he was incarcerated.  A nurse responded that the study was not in his records.  She suggested that he could perhaps request the results.

2

On December 1, 2025, Gonzalez submitted a health services request asking about the status of the sleep study that his provider had ordered in June. He again stated that he was in a lot of pain and that his nose was bleeding. He explained that he was having headaches and could not breathe properly. He asked that someone please help him. A nurse informed him that he was on the list for a sleep study and that a machine would be ordered based on the results.

According to Gonzalez, he was given a CPAP machine without a sleep study being performed. On March 4, 2026, Gonzalez submitted a health services request form explaining that there was too much pressure in the mask and he could not exhale comfortably. He stated that he was still having issues breathing because of his nose. In response, a nurse explained that the machine continually adjusts the pressure throughout the night to keep the airways open. She encouraged Gonzalez to use the machine every night. On March 11, 2026, Gonzalez submitted a form stating that he could not use the machine with stitches on his face. It is not clear why Gonzalez had stitches on his face. A nurse referred him to be seen by a "CPAP nurse." On May 1, 2026, Gonzalez received a notice that he was not using the CPAP machine as prescribed. He was informed to contact the health services unit if he was having trouble with the equipment or to return the machine if he did not want to use it anymore.

### THE COURT'S ANALYSIS

A prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate's health violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A delay in medical treatment may constitute deliberate indifference if the delay exacerbates the injury or unnecessarily prolongs an inmate's pain, particularly if a provider knows that the pain is treatable. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). Based on the foregoing, Gonzalez states a claim against his provider APNP Denneau based on allegations that she did not promptly or adequately address his persistent complaints about his trouble breathing, nosebleeds, headaches, and facial deformity from a collapsed nostril. According to Gonzalez, he waited more than six months for a sleep study that ultimately never occurred and was offered a CPAP machine that he could not use and did not address his complaints. These allegations are sufficient at this stage for the Court to reasonably infer that APNP Denneau was deliberately indifferent to his serious medical condition.

Gonzalez does not, however, state a claim against Health Services Manager Weisnicht. Gonzalez asserts that she did not properly train APNP Denneau, but the health services manager position is primarily administrative in nature, and Gonzalez sets forth no factual allegations from

which the Court can reasonably infer that she had any responsibility for his medical care or substantive oversight over the care provided to him by medical providers. Moreover, there is no supervisory liability under §1983. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). With regard to Weisnicht's personal involvement, Gonzalez alleges only that, in response to one of his health services request forms, Weisnicht confirmed that he had recently had an appointment with a nurse and that his complaints had been forwarded to his provider. The Court cannot reasonably infer from this single interaction that she was deliberately indifferent to his condition. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021).

For similar reasons, Gonzalez fails to state a claim against John and Jane Doe Defendants. It is not clear what Gonzalez believes these unnamed individuals did or did not do to violate his rights. To the extent he was dissatisfied with the responses he received from the nurses who triaged his health services requests, Gonzalez is advised that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Based on the complaint, it appears that these nurses promptly responded to Gonzalez's health services requests by confirming his past and upcoming appointments, referring him to a nurse or provider, or asking questions to clarify his concerns. The Court cannot reasonably infer from these limited interactions that these nurses were deliberately indifferent to Gonzalez's condition.

**IT IS THEREFORE ORDERED** that Gonzalez fails to state a claim against the John and Jane Doe Defendants and Tricia Weisnicht, so the clerk's office is directed to terminate them from this case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Gonzalez's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Amy Denneau.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Amy Denneau shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

4

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Gonzalez is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 7th day of July, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

5